IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE HANOVER INSURANCE COMPANY, )
)
       Plaintiff, )
) NO. 18-cv-1018
v. )
)
BLUE RIDGE PROPERTY )
MANAGEMENT, LLC, )
)
       Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Hanover Insurance Company, ("Hanover"), by its attorneys, Lewis Brisbois Bisgaard & Smith LLP, states as follows for its request for declaratory relief and judgment against Defendant Blue Ridge Property Management, LLC ("Blue Ridge"):

## INTRODUCTION

1. This is an insurance coverage dispute between Hanover and Blue Ridge. In this action, Hanover seeks a declaration that it has no duty to defend or indemnify Defendant Blue Ridge under a claims-made and reported Miscellaneous Professional Liability Policy in connection with the underlying putative class action suit captioned *McMillan, et al. v. Blue Ridge Property Management, LLC, et al.,* bearing Case No.18-CVS-4991, filed in the General Court of Justice, Superior Division, County of Cumberland.

## PARTIES, JURISDICTION AND VENUE

2. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

3. Plaintiff Hanover is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

4. Defendant, Blue Ridge, is a limited liability company organized under the laws of North Carolina, with its principal place of business at 5826 Samet Dr., Suite 105, High Point, North Carolina, 27265.

5. David F. Couch is a member-manager of Blue Ridge and a citizen of the State of North Carolina.

6. Christopher T. Dunbar is a member-manager of Blue Ridge and a citizen of the State of North Carolina.

7. The Underlying Lawsuit for which Blue Ridge seeks a defense and indemnity from Hanover is a putative class action. The Hanover Policy has Limits of Liability of $1 million Each Claim and $1 million in the Aggregate.

8. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Hanover, on the one hand, and Blue Ridge, on the other hand; and (b) the amount in controversy, including the potential costs of both defending and indemnifying Blue Ridge, substantially exceeds $75,000.

9. Venue is appropriate under 28 U.S.C. § 1391 because the making of the insurance contract at issue, which forms the basis of this action occurred in the Middle District of North Carolina.

## FACTUAL BACKGROUND

### A. The Underlying Lawsuit

10. On July 16, 2018, Elizabeth McMillan and Tiffany Scott, individually and on behalf of class members defined therein, filed a Class Action Complaint in the General Court of Justice, Superior Division, County of Cumberland captioned *McMillan, et al. v. Blue Ridge Property Management, LLC, et al.,* and bearing Case No.18-CVS-4991 against Blue Ridge and others (the "Underlying Lawsuit"). A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A**.

11. The Complaint alleges that Blue Ridge provides property management services, including but not limited to, to tenants of the apartment complex owned by BRC Cross Creek, LLC d/b/a

Legacy at Cross Creek and/or Fayetteville Cross Creek, LLC d/b/a Legacy at Cross Creek (hereinafter referred to as "Legacy") in Fayetteville, North Carolina. According to the Complaint, Blue Ridge is a "landlord" as defined by N.C.G.S. §42-40(3).

12. The Complaint further alleges that Scott and McMillan are "tenants" subject to the protections of N.C.G.S. § 42-46 and "consumers" as defined by N.C.G.S. § 75-50.

13. The Complaint alleges that Blue Ridge has maintained a uniform, statewide policy per the terms of its lease of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 16th day of any given month to pay filing fees, sheriff service fees, and attorneys' fees (collectively referred to as the "Eviction Fees") in addition to the "Complaint-Filing Fee" purportedly allowed pursuant to § 42-46(e). The Eviction Fees are allegedly additional fees separate and apart from the ones expressly authorized by N.C.G.S. § 42-46.1.

14. The Complaint further alleges that when a tenant fails to make a full and complete rental payment, or maintains a rental balance on their account ledger in excess of $0.00 after the 13th day of any given month, Blue Ridge causes written letters or emails to be delivered to the tenant stating that if a tenant does not pay by the 16th of the month, and "legal action is necessary, any expenses we incur will be charged to your account".

15. The Complaint alleges that pursuant to the Collection Policy, tenants owe, and are required to pay Eviction Fees even if: (a) the complaint in summary ejectment had not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders the Eviction Fees to be assessed against Defendants.

16. According to the Complaint, when a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 on or around the 16th day of any given month, Blue Ridge files legal action to evict the tenant and immediately before filing legal action to evict a tenant, or shortly thereafter, Blue Ridge's post to the tenant's account ledger all Eviction Fees as immediately due and owing. The Complaint further alleges that all the Eviction Fees are posted to

3

a tenant's account ledger are in addition to, and separate from, the late fees and the fees specifically authorized by N.C.G.S. § 42-46(e)-(g), including the "Complaint-Filing Fee."

17. The Eviction Fees are purportedly entered into a tenant's account ledger prior to a North Carolina court awarding such amounts to Blue Ridge, and sometimes before a complaint in summary ejectment is even filed. The Complaint also alleges that at the time the Eviction Fees are entered into the account ledger as immediately due and owing, there is no guarantee that Blue Ridge will ever be awarded such fees by a North Carolina court.

18. According to the Complaint, Blue Ridge immediately begins attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy, and there are no occasions in which Blue Ridge will review and reconsider whether such Eviction Fees were improperly assessed, even if a complaint in summary ejectment filed against a tenant is dismissed or not awarded.

19. Pursuant to the Collection Policy, Blue Ridge also allegedly posts to the tenant's account ledger the "Complaint Filing Fee" identified in N.C.G.S. § 42-46(e) identified as a "Legal Filing Administrative Fee", which is immediately due and owing upon posting and is regularly entered onto a tenant's ledger before a complaint in summary ejectment is even filed.

20. The Complaint alleges that after the "Legal Filing Administrative Fee" is entered onto an individual's account ledger, there are no occasions in which Blue Ridge will review and reconsider whether the "Legal Filing Administrative Fee" was improperly assessed, even if a complaint in summary ejectment filed against a tenant is not dismissed.

21. The Complaint contains six counts against Blue Ridge.

22. Count I and Count II allege violation of the North Carolina Residential Rental Agreements Act N.C.G.S. § 42-46. According to Count I, N.C.G.S. § 42-46(e)-(h) specifically limits the amounts that can be charged to a tenant for eviction related fees and any amounts charged in excess of this limitation is against North Carolina's public policy and therefore void and unenforceable. The Complaint alleges that the Eviction Fees charged by Blue Ridge were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constitute a violation of North Carolina law. Count II alleges

4

the "Complaint Filing Fee" charged by Blue Ridge was not authorized by N.C.G.S. § 42-46 because the complaints for summary ejectment and/or money owed were not filed and served prior thereto, and therefore constitute a violation of North Carolina law.

23. Count III alleges violation of North Carolina Debt Collection Act N.C.G.S. § 75-50, et seq. 88. According to the Complaint: (1) The Initial Collection Letter violated N.C.G.S. § 75-50 et seq. by threatening to take actions it could not lawfully take; (2) Blue Ridge violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law; (3) Blue Ridge violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, inter alia, threatening to assess and collect Eviction Fees and the "Complaint Filing Fee" without a legal justification; and (4) Blue Ridge violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, inter alia, threatening to assess and collect Eviction Fees and the "Complaint Filing Fee" without a legal justification.

24. The Complaint further alleges that a violation of N.C.G.S § 42-46 constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 et seq., and that Blue Ridge violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

25. Thus, according to the Complaint, Blue Ridge's actions were legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. § 75-51(8), N.C.G.S. § 75-54, and N.C.G.S. §75-55 (2).

26. The Complaint further alleges that Blue Ridge's actions in violation of North Carolina's Debt Collection Act were willful.

27. Count IV alleges violation of the North Carolina Unfair and Deceptive Trade Practices Act N.C.G.S. § 75-1.1, et seq., and that Blue Ridge's conduct is against the established public policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer. The

Complaint further alleges that Blue Ridge's actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

28. Count V seeks a temporary and permanent injunction enjoining Blue Ridge from attempting to unlawfully collect upon the "Complaint Filing Fee" in violation of § 42-46(e) pursuant to N.C.G.S. § 1-485, et. seq. Count VI seeks a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25 that N.C.G.S. § 42-33 is not applicable pursuant to the terms of the lease.

### B. The Hanover Policy

29. Hanover issued a Miscellaneous Professional Liability Policy No. LHY A7180504-02 to Blue Ridge Property Management, LLC, effective 8/30/17 to 8/30/18 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit B**. The limits of liability are $1 million per **Claim** and $1 million in the aggregate for all **Claims**. **Claim expenses** are included within the limit of liability. Item 6. **PROFESSIONAL SERVICES** in the Declarations lists, "Property Manager".

30. The Insuring Agreement in the Policy provides, in pertinent part:

> **A. COVERAGE —WHAT THIS POLICY INSURES**
>
> **1.** Professional Services Coverage
>
> **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you.**
>
> The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:
>
> > a. The **wrongful act** must have first occurred on or after the applicable **retroactive date(s);**
> >
> > b. **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim,** or any knowledge of the **claim,** prior to the effective date of this **policy;** and,
> >
> > c. The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period,** if applicable, and must arise from any **wrongful act** to which this **policy** applies.
>
> \*\*\*
>
> **B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)**
>
> **We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy,** even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you. We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you.** If a **claim** is not covered under this **policy, we** will have no duty to defend it.

31. The Policy contains the following pertinent Definitions:

**Claim** means a written demand or **suit you** receive.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

　　　　* * *

**Damages** do not include any costs or expenses in complying with any demand for or award of **equitable relief,** even if such compliance is compelled as a result of a judgment, award or settlement.

**Professional services** means those services described in Item **6.** of the Declarations which **you** perform for others for a fee.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services.**

32. The Policy contains Exclusions, which in pertinent part state:

This **policy** does not apply to **claim(s)**:

**3.** For the return, restitution or reduction of professional fees or arising from any demand for **equitable relief**;

**11.** Arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

B. [1]The following is added to **SECTION E – EXCLUSIONS**:
This **policy** does not apply to **claim(s)** for any fines, penalties, sanctions or taxes.

33. Blue Ridge has requested coverage from Hanover for the Underlying Lawsuit and Hanover is defending Blue Ridge against the Underlying Lawsuit, subject to a reservation of rights. Hanover contends that it has no obligation to defend or indemnify Blue Ridge against the Underlying Lawsuit. Accordingly, an actual controversy exists between Hanover, on the one hand, and Blue Ridge,

---

[1] See, Exhibit A, at Fair Housing Act Coverage Endorsement/

on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

### COUNT I – DECLARATORY JUDGMENT
(No Duty to Defend or Indemnify Pursuant to Exclusion 11)

34. Hanover hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

35. The Underlying Lawsuit alleges that Blue Ridge engaged in unfair and deceptive practices in violating the North Carolina Residential Rental Agreements Act N.C.G.S. § 42-46, the North Carolina Debt Collection Act N.C.G.S. § 75-50, et seq. 88, and the North Carolina Unfair and Deceptive Trade Practices Act N.C.G.S. § 75-1.1, et seq.

36. Therefore, the Underlying Lawsuit is a **claim** arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws.

37. The Underlying Lawsuit, therefore, is not actually or potentially covered under the Hanover Policy pursuant to Exclusion 11.

38. As a result, Hanover has no duty to defend or indemnify Blue Ridge against the Underlying Lawsuit.

**WHEREFORE**, Plaintiff, The Hanover Insurance Company, prays that this Honorable Court enter judgment in its favor and against Defendant and declaring that:

(1) Hanover has no duty to defend or indemnify the Insured in connection with the Underlying Lawsuit;

(2) Blue Ridge is obliged to reimburse Hanover for any payments made in connection with the Underlying Lawsuit to the extent permitted by law; and

8

Case 1:18-cv-01018-WO-LPA     Document 1     Filed 12/13/18     Page 8 of 11

(3) granting Hanover any other and further relief that this Court deems just and proper, including attorney's fees and costs to the extent permitted by law.

## COUNT II
### (Declaratory Judgment – Insuring Agreement – Wrongful Acts)

39. Hanover hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

40. In order for the Insuring Agreement of the Hanover Policy to grant coverage for the Underlying Lawsuit, each claim must be for Wrongful Acts committed in the rendering or failure to render Professional Services after the retroactive date against an Insured, as those terms are defined in the Hanover Policy.

41. The Underlying Lawsuit Complaint does not allege acts on the part of the Defendant that constitutes Wrongful Acts under the Hanover Policy, because the alleged acts do not arise out of Professional Services, which is defined as any negligent act, error, omission, or misstatement committed in your services as "property manager", because the acts at issue are alleged to be done as a willful pattern or practice. See Exhibit A, Para. 112:

> Defendants have a pattern, practice and policy of charging tenants Eviction Fees on or around the 16th day of the month, which includes, but is not limited to:
>
> **a.** Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* in that Defendants represented that a specific amount of debt may be increased by Eviction Fees prior to the award of such amounts by a North Carolina court;
>
> **b.** Whether Defendants' pattern, practice, and policy of utilizing the Initial Collection Letters violated N.C.G.S. §§ 42-46 and 75-50 *et seq.* by falsely representing Defendants ability to collect Eviction Fees;

9

**c.**  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees and the "Complaint Filing Fee" was illegal under N.C.G.S. §§ 42-46 and 75-50 *et seq.;*

**d.**  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees and the "Complaint Filing Fee" violated N.C.G.S. § 75-1.1 *et seq.;*

**e.**  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt violated N.C.G.S. § 75-1.1 *et seq. in that* Defendants refused to refund Eviction Fees after a Court taxed the cost of the action against Defendants.

**f.**  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Attorneys' Fees were in violation of N.C.G.S. §§ 6-2L2 and 42-46 in that Defendants' attorneys were not collecting upon any debt;

**g.**  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect Eviction Fees constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed Attorneys' Fees were due and owing despite the absence of any statutory authority granting such fees.

**h.**  Whether Defendant's pattern, practice, and policy of collecting and/or attempt to collect the "Complaint Filing Fee" constituted a violation of N.C.G.S. § 75-1.1 *et seq.* in that Defendants unlawfully claimed the "Complaint Filing Fee" as due and owing prior to filing and serving complaints in summary ejectment.

42.  Hanover contends that it has no obligation to defend or indemnify Blue Ridge against the Underlying Lawsuit. As a result, an actual controversy exists between Hanover, on the one hand, and Blue Ridge, on the other hand, and by the terms and provisions of Rule 57 of

the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**WHEREFORE**, Plaintiff, The Hanover Insurance Company, prays that this Honorable Court enter judgment in its favor and against Defendant and declaring that:

(1) Hanover has no duty to defend or indemnify the Insured in connection with the Underlying Lawsuit;

(2) Blue Ridge is obliged to reimburse Hanover for any payments made in connection with the Underlying Lawsuit to the extent permitted by law; and

(3) granting Hanover any other and further relief that this Court deems just and proper, including attorney's fees and costs to the extent permitted by law.

Respectfully submitted,

The Hanover Insurance Company

By: /s/ Christopher J. Derrenbacher
Christopher J. Derrenbacher
NC State Bar No. 25402
Lewis Brisbois Bisgaard & Smith, LLP
4101 Lake Boone Trail, Suite 514
Raleigh, NC 27607
T: (919) 821-4020
F: (919) 829-0055
Christopher.Derrenbacher@lewisbrisbois.com